**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MELVIN E. THOMAS #03584-000
USP- Terre Haute
          PLAINTIFF

POB 12015
Terre Haute, IN 47801
          v.

CIVIL NO._____

EDWARD F. REILLY JR.
CHAIRMN OF THE UNITED STATES
PAROLE COMMISSION,

CRANSTON J, MITCHELL,
COMMISSIONER OF THE U.S.
PAROLE COMMISSION,

DEBRA A. SPANGOLI,
COMMISSIONER,

PATRICIA K. CUSHWA,
COMMISSIONER

ISAAC FULWOOD JR.
COMMISSIONER

UNITED STATES PAROLE COMMISSION
5550 FRIENDSHIP BOULEVARD
SUITE 420-CHEVY CHASE, MD. 20815

*Complaint*

Case: 1:07-cv-01689
Assigned To : Unassigned
Assign. Date : 9/24/2007
Description: Pro Se gen. Civil

*CASE RE-ASSIGNED
DEC 0 4 2007
TO: COLLYER, J. RMC*

**NOW COMES** PLAINTIFF, Melvin E. Thomas proceeding in this matter in a pro se capacity and brings this Civil Action under 42 U. S. C. 1983 and 1331 and 1343 (a)(3), (a) (4), (b)(1) and 28 U. S. C. § § 2201 against the Defendants, thier predecessors or designees for the vioations of Due Process and various injurious acts against plaintiff in improperly and continually denying his request he has made for parole. Plaintiff challenges actions taken by the Defendants pursuant to the National Capital Revitilization Act of 1997. Section 1983 provides for recovery against any person who has deprived plaintiff of a Constitutional right "under color of any.... statute of any state or territory or District of Columbia", 42 U.S.C. 1983. Because the Revitilization Act is such a statute, Defendants

**RECEIVED**

AUG 27 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

who are members of the United States Parole Commission are amendable
to suit under § 42 U.S.C. 1983 for actions taken against plaintiff
pursuant to the "Act" (NCRA). See Fletcher v. District of Columbia,
370 F3d 1223 (D.C.Cir.2004). Plaintiff seeks declaratory and injunc-
tive relief because of the incorrect procedures used for determining
his suitability and eligibility for parole.

## JURISDICTION

1. Plaintiff seeks to vindicate rights protected by the Ex Post Facto
Clause of the United States Constitution, and federal law. This Court
has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.§§  1331
and 1343(a)(3),(a)(4),(b)(1), and 42 U.S.C. § 1983.

2. This Court has jurisdiction and authority to grant declaratory
relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. This Court has jurisdiction to declare the rights of the Plaintiff
and grnt all further relief found necissary and proper.

4. ## VENUE

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Melvin E. Thomas is confined at the United States Peni-
tentiary at Terre Haute Indiana pursuant to sentences imposed in the
Superior Court of 15 years to life imposed on September 12, 1990, and
5 to 15 years imposed on September 20, 1990-these sentences were then
aggrevated by the Department of Corrections and he became eligible
for  parole on spetember of 2003. Plaintiff was ent to the Federal
Prison system in 1997 from the D.C. Lorton sysytem. Plaintiff is con-
fined to wheelchair and paralized-currently in the Life Connections
Progrma which is a Religious Faith Based 18 month intence program.

-2-

DEFENDANTS IN THEIR INDIVIDUAL PERSONAL AND OFFICIAL CAPACITIES

6.   Defendant Edward F. Reilly, Jr. is the current Chairman of the Commission.

7.   Defendant Patricia K. Cushwa is a current Commissioner of the Commission.

8.   Defendant Isaac Fulwood, Jr. is a current Commissioner of the Commission.

9.   Defendant Cranston J. Mitchell is a current Commissioner of the Commission.

10.   Defendant Deborah A. Spagnoli is a current Commissioner of the Commission.

11.   Defendants, as the Chairman and/or Commissioners of the Commission, were and are responsible for reviewing and acting upon Plaintiffs' requests for parole in accordance with the United States Constitution and federal law and regulations.

## INTRODUCTION

12.   Plaintiff **is currently** serving sentences imposed by the Superior Court of the District of Columbia for various violations of the District of Columbia Code. At the time that Plaintiff committed the crimes for which **he is** convicted and were sentenced, authority for parole decisions for D.C. Code violators was vested in the District of Columbia Parole Board (the "Parole Board").

13.   On August 5, 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act (the "Revitalization Act"), Pub. L. No. 105-33, § 11231, 111 Stat. 712 (1997).

14.   The Revitalization Act abolished the Parole Board, *see* Pub. L. No. 105-33 § 11231(b), and directed the Defendants, as the Chairman and Commissioners of the Commission, to conduct parole hearings for D.C. Code prisoners "pursuant to the parole laws and regulations of the District of Columbia," *id.* § 11231(c).

15. On August 5, 1998, Defendants assumed the responsibility for making parole-release decisions for all eligible D.C. Code felons, pursuant to the Revitalization Act.

16. In 2000, despite the requirements of the Revitalization Act that the Defendants apply the parole statutes, regulations, guidelines, and practices of the Parole Board, the Defendants published new parole rules, regulations, and guidelines that they deemed applicable to any D.C. Code inmate receiving an initial parole hearing after August 5, 1998 (the "2000 Guidelines"). *See* 28 C.F.R. § 2.80(a)(5).

17. For inmates who had an initial parole hearing date prior to August 5, 1998, the Defendants chose to apply the Parole Board's Guidelines. *See* 28 C.F.R. § 2.80(a)(4). For all other inmates, some variation of the Defendants' 2000 Guidelines apply. *See id.* § 2.80(a)(1) & (5).

I.    **REGULATORY FRAMEWORK FOR PAROLE DECISIONS FOR D.C. CODE INMATES AT THE TIME OF THE PLAINTIFFS' CONVICTIONS AND SENTENCING.**

18. Prior to 1998, at the time that Plaintiff committed the crimes for which he is currently imprisoned and at the time that he was sentenced, the Parole Board administered parole proceedings for D.C. Code violators in the custody of the District of Columbia.

19. Prior to 1998, where D.C. Code offenders were in the custody of the United States Government, the Commission administered their parole hearings, but in such circumstances, the Commission was required to apply the Parole Board's regulations, guidelines, policies, and practices, which were found by this Court to have the force and effect of law.

20. Under the Parole Board's statutes, regulations, guidelines, policies, and practices, the "minimum sentence" for a crime, i.e., the period that an inmate must serve before he or she is eligible for parole, satisfied the inmate's accountability for the offense of conviction.

21. In conducting parole hearings and making parole determinations, the Parole Board applied mandatory guidelines, many of which were codified as municipal regulations, that carefully prescribed the method and criteria that the Parole Board used to render decisions on parole requests. As its guide for determining whether an incarcerated individual would be paroled or re-paroled, the Parole Board used the criteria set forth in the guidelines.

22. At the time that the Plaintiff committed the crimes for which he is currently imprisoned, and at the time of the sentencing for those crimes, the Parole Board made parole decisions for D.C. Code offenders using guidelines that it formally adopted in 1985, and published in the District of Columbia Municipal Regulations in 1987 (the "1987 Guidelines").

23. In 1991, to ensure consistent and equitable application of the 1987 Guidelines and other parole regulations, the Parole Board adopted a Policy Guideline defining terms used in the 1987 Guidelines (the "1991 Policy Guideline"). The 1991 Policy Guideline applied to all requests for parole heard by the Parole Board.

24. The 1987 Guidelines required the Parole Board to calculate a Salient Factor Score ("SFS") for each prisoner. Based on a parole applicant's SFS, the Parole Board then calculated a "total point score", using pre- and post-incarceration factors, on which it based its decision to either grant or deny parole. In "unusual circumstances," when mitigating and/or countervailing factors applied, the Parole Board could depart from an action (to grant or to deny parole) otherwise indicated by an inmate's total point score.

25. In the case of an initial parole hearing, the 1987 Guidelines state that:

> After determining an adult parole candidate's SFS score and after applying the pre and post incarceration factors to arrive at a total point score pursuant to §204 and Appendix 2-1, the Board shall take one (1) of the following actions:

   (a)  IF POINTS = 0:  Parole shall be granted at initial hearing
                            with low level of supervision required;

   (b)  IF POINTS = 1:  Parole shall be granted at initial hearing
                            with high level of supervision required;

   (c)  IF POINTS = 2:  Parole shall be granted at initial hearing
                            with highest level of supervision
                            required; or

   (d)  IF POINTS = 3-5:Parole shall be denied at initial hearing
                            and rehearing scheduled.

26.  In the case of a parole rehearing, the 1987 Guidelines state that:

In determining whether to release on parole an adult or a youth offender appearing before the Board at a parole rehearing, *the Board shall take the total point score from the initial hearing* and adjust that score according to the institutional record of the candidate since the last hearing pursuant to Appendix 2-2. The Board shall then take one of the following actions:

   (a)  IF POINTS = 0-3:Parole shall be granted at this rehearing
                            with highest level o[f] supervision
                            required; or

   (b)  IF POINTS = 4-5:  Parole shall be denied and a rehearing
                            date scheduled.

27.  The 1987 Guidelines directed the Parole Board to grant parole to an adult at a parole rehearing if the final adjusted score is less than four, except in "unusual circumstances," as discussed *infra* ¶¶ 36-37.

28.  The manner in which the "institutional record of the candidate" is used to adjust the total point score from the initial hearing, as required by 28 D.C.M.R. § 204.21, also is the subject of precise guidelines adopted by the Parole Board. The adjustment is done via the "point grid" in Appendices 2-1 and 2-2 of title 28 of the District of Columbia Municipal Regulations. Appendix

2-1 is used to calculate an inmate's SFS and total point score at the initial parole hearing, and

Appendix 2-2 is used to calculate an inmate's SFS and total point score at a parole rehearing.

29. Pursuant to Appendices 2-1 and 2-2 of the Parole Board Guidelines, in parole

hearings, one point can be added to an inmate's total point score for "negative institutional

behavior."

30. In section VI.A.1 of the 1991 Policy Guideline, the Parole Board defined the types

of institutional disciplinary actions that would qualify as "negative institutional behavior":

1. **Negative Institutional Behavior** consists of serious or repeated major disciplinary infractions as described below that are sanctioned under Department of Corrections due process procedures.

a. In INITIAL PAROLE CONSIDERATION cases, the following disciplinary infractions shall ordinarily be considered as negative institutional behavior:

(1) One Class I Offense for murder, manslaughter, kidnapping, armed robbery or first degree burglary at any time during the minimum sentence (see DCMR 28-502.3, May 1987); OR

(2) One Class I Offense . . . *during the 12 months preceding the hearing OR during the last half of the minimum sentence up to a period of three years*, whichever is longer; OR

(3) Two Class II Offenses . . . *during the 12 months preceding the hearing OR during the last half of the minimum sentence up to a period of three years*, whichever is longer.

b. In PAROLE RECONSIDERATION cases, the following disciplinary infractions occurring *since the preceding release consideration on the sentence* shall ordinarily be considered as negative institutional behavior:

(1) One Class I Offense (see DCMR 28-502.3 through 502.17, May 1987); OR

(2) Two Class II Offenses (see DCMR 28-503.2 through 503.12, May 1987).

31.. Pursuant to Appendices 2-1 and 2-2, in parole hearings, one point can be subtracted from an inmate's total point score for "Program Achievement" (referred to in the 1991 Policy Guideline as "sustained program or work assignment achievement").

32. Section VI(A)(2)(a) of the 1991 Policy Guideline defines "sustained program or work assignment achievement" for purposes of Appendix 2-1 as:

> In INITIAL PAROLE CONSIDERATION cases, the following accomplishments shall ordinarily be considered as sustained program or work assignment achievement during the period of incarceration:
>
> (1) Successful completion of one or two educational or vocational programs, or program levels, each of which enabled the offender to develop an academic or job-related skill, OR enabled the offender to progress to a higher level of difficulty or skill in the program area.

33. For purposes of parole rehearings under Appendix 2-2 of the 1987 Guidelines, Section VI(A)(2)(b) of the 1991 Policy Guideline defines "sustained program or work assignment achievement": "In PAROLE RECONSIDERATION cases, the accomplishments set forth in Section VI-A-2(a) of this policy shall ordinarily be considered as sustained program or work assignment achievement where completion occurred since the preceding consideration for release on the sentence."

34. The "negative institutional behavior" and "program achievement" factors correspond to two findings required by Appendices 2-1 and 2-2: "Has this offender committed serious infractions (adjudicated under Department of Corrections due process procedures)?" and "Has this offender demonstrated sustained achievement in the area of prison programs, industries or work assignments during this period of incarceration?"

35. As noted above, the Parole Board could depart from the result dictated by sections 204.19 and 204.21 only in "unusual circumstances," and when it followed particular procedures:

Any parole release decision falling outside the numerically determined guideline should be explained by reference to the specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-2. Section 204.22 of the District of Columbia Municipal Regulations provides that:

> The Board may, *in unusual circumstances*, waive the SFS and the pre and post incarceration factors [which comprise the total point score] set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

36. In the 1991 Policy Guideline, the Parole Board further defined the scope of its authority to deny parole for "unusual circumstances" when a point score indicates that parole should be granted. Section VI(C) of the 1991 Policy Guideline, titled "FACTORS COUNTERVAILING A RECOMMENDATION TO GRANT PAROLE," lists and defines the following to constitute "unusual circumstances" countervailing a grant of parole:

a.   Repeated Failure Under Parole Supervision;

b.   Ongoing Criminal Behavior;

c.   Lengthy History of Criminally-Related Alcohol Abuse;

d.   History of Repetitive Sophisticated Criminal Behavior;

e.   Unusually Extensive or Serious Prior Record;

f.   Instant Offense Involved Unusual Cruelty to Victims, which applied where the offense involved physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense or especially vulnerable victims such as children or elderly persons; and

g.   Repeated or Extremely Serious Negative Institutional Behavior.

37. The Parole Board further defined these "unusual circumstances" in the 1991 Policy Guideline and established objective criteria to determine their applicability.

## II.    THE PAROLE REGULATIONS USED BY DEFENDANTS.

**38.** As noted above, the Revitalization Act abolished the Parole Board and directed the Commission to conduct parole hearings for District of Columbia offenders according to the parole statutes, regulations, guidelines, policies, and practices of the District of Columbia.

**39.** After the Commission assumed responsibility for parole hearings for D.C. Code offenders, the Commission adopted the 2000 Guidelines and determined that those guidelines would apply to any D.C. Code offender that had not received an initial parole hearing as of August 5, 1998.

**40.** Unlike the Parole Board's statutes, regulations, guidelines, policies, and practices, the Commission's 2000 Guidelines and parole eligibility criteria do not consider the completion of a prisoner's "minimum sentence" as satisfying offense accountability. Instead, the Commission and its designees have repeatedly denied D.C. inmates' requests for parole, including those of Plaintiffs, on the ground that they believe that the inmates have not served enough time for their offenses, i.e., that the inmates have not been incarcerated long enough to satisfy the accountability for their offenses.

### A.    PAROLE ELIGIBILITY

**41.** To account for the nature and circumstances of parole applicants' offenses, and the history and characteristics of the prisoners, the 2000 Guidelines contain instructions for the rating of certain offenses. Chapters 1 through 12, § 2.20 of the Commission Rules and Procedures comprise the Commission's offense severity index.

**42.** Like the 1987 Guidelines, the 2000 Guidelines require the Commission to determine a Salient Factor Score ("SFS") for each parole applicant, which is based upon factors such as prior convictions/adjudications, prior commitments of more than 30 days, age at current

offense/prior commitments, recent commitment-free period, probation/parole/confinement/ escape status at the time of the current offense, and the age of the offender. The Commission guidelines, however, also allow the "Commission [to] take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." Under the Commission guidelines, the SFS becomes a part of a Base Point Score ("BPS") which is comprised of three categories in which points are assigned according to the following factors:

> Category I – Risk of Recidivism (Based on the Salient Factor Score)
> Category II – Current or Prior Violence
> Category III – Death of a Victim or High Level of Violence

(Although the Parole Board guidelines also require the formulation of an SFS for parole applicants, the Parole Board used the SFS only to determine the risk of recidivism on the part of the parole applicant. The Parole Board did not use the SFS as the basis for an increase in the period of imprisonment the inmate had to serve to demonstrate parole suitability.)

43.    The Commission's method of determining parole eligibility is to apply the BPS (the combination of points assigned from Categories I-III) to the appropriate category of offense behavior, then to *add the* corresponding number of *months to a parole applicant's minimum sentence* (the number of months an inmate must serve before becoming eligible for parole), based on the offense severity index. The months added to the parole applicant's minimum sentence based on the BPS are considered to be the "Base Guideline Range", and are used by the Commission and its designees to determine the additional months of imprisonment that the inmate must serve above the months that the Parole Board required for parole eligibility.

### 1.    Program Achievement

**44.** Pursuant to section 2.80(e)(1) of the Commission's guidelines, the Commission "shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense." Under this structure, the Commission has the sole discretion of determining whether the parole applicant's work and program achievements are to be considered "superior" or "ordinary." Per the Commission's guidelines, "if superior achievement is found, the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement." (The Parole Board guidelines, on the other hand, use an objective standard to reward "Sustained Program Achievement or Work Assignment Achievement", and an award is granted even for what the Commission might consider "ordinary" achievement.)

### 2.    Institutional Behavior

**44.** The Commission's guidelines, like those of the Parole Board, take an inmate's institutional behavior into account for purposes of parole determinations. Unlike the Parole Board's guidelines, the 2000 Guidelines determine a range of months that the Commission adds to an inmate's minimum sentence under the provisions of 28 C.F.R. § 2.36 "for any significant disciplinary infractions since the beginning of confinement on the current offense in the case of an initial hearing, and since the last hearing in the case of a rehearing." 28 C.F.R. § 2.80(j).

**45.** Unlike the Parole Board's guidelines, 28 C.F.R. §§ 2.80(j) and 2.36 do not limit consideration at initial parole hearings of institutional behavior within the three years prior to the parole hearing.

## B.   DETERMINING WHETHER TO GRANT PAROLE

46. The "Total Guideline Range" (the ultimate determination of time to be served to establish presumptive suitability for parole pursuant to the Commission's guideline structure) is reached by adding: "the minimum of the base point guideline range, the number of months required by the prisoner's parole eligibility date, and the minimum of the guideline range for disciplinary infractions, if applicable. Then subtract the award for superior program achievement, if applicable."

47. After calculating an inmate's Total Guideline Range, under the 2000 Guidelines, the Commission "may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines." 28 C.F.R. § 2.80(n).

48. 28 C.F.R. § 2.80(n) defines "unusual circumstances" for purposes of the 2000 Guidelines and provides examples similar to those applied by the Parole Board, but without the definitions of such unusual circumstances that the Parole Board adopted in the 1991 Policy Guideline to ensure consistency in parole determinations.

49. Pursuant to section 2.80(a)(4) of the Commission's guidelines regarding D.C. Code offenders, the Commission's guidelines apply to "all prisoners who are given initial parole hearings on or after August 5, 1998. For prisoners whose initial hearings were held prior to August 5, 1998, the Commission shall render its decisions by reference to the guidelines applied by the D.C. Board of Parole." Thus, regardless of the statutes, regulations, guidelines, policies, and practices in effect when an offender committed his or her crime and was sentenced, the offender's fitness for parole may hinge arbitrarily upon the date of his or her initial parole hearing.

-13-

III. PLAINTIFFS THOMAS' PAROLE HEARINGS

A. <u>COMMISSIONERS USE OF THE 2000 GUIDELINES</u>

50. On September 12, 1990, Superior Court Judge Roert Scott imposed a sentence on Mr. Thomas of fifteen years to life for one count of assault with intent to kidnap while armed. D.C. Code § 22-503, 3202. On September 20, 1990, his probation was revoked and a sentence of five to fifteen years was imposed for assault with intent to rob, D.C. Code

51. Under the statutes, regulations, guidelines, policies and practices of the D.C. Parole Board, Mr. Thomas became eligible for parole on Sept. 2003. Using the Commissions 2000 Guidelines, the Respondents conducted his initial parole hearing in September 2003, and then his rehearing in 2006 July.

52. Despite the fact that Mr. Thomas had been convicted and sentenced at a time when the Parole Board applied its 1987 Guidelines and other policies and practices to parole determinations, the Commission or its predecessors instructed hearing examiner Otis Thomas (who conducted the initial hearing) and Paul Howard (who conducted the rehearing) to employ the 2000 Guidelines in evaluating Mr. Thomas' request for parole.

53. Under the District of Columbia's Parole Statutes, regulations, guidelines, policies and prctices, Mr. Thomas had served the "minimum sentence" fro his offences when he became eligible for parole. Under the Parole Boards statutes, regulations, guidelines, policies and practices the "minimum sentence" [less applicable good time] represented the period that an inmate needed to serve to satisfy accountability for the offence itself.

54. Under the 2000 Guidelines, however, Mr. Thomas' salient factor score at his initial hearing in 2003 was five and remained the same until his rehearing conducted three years later, his base point score was eight.

-14-

This placed him in the "fair risk" catgory for a parole grant. The base point score was based on the offence and prior violence. (Which the D.C. Board had already taken into account within the completion of the minimum term-"accountability for the offence") Mr. Thomas' point score as the 2000 Guidelines concluded, increased the number of months he was expected to serve from the minimum term at which he was eligible for parole 179 months, by an additional 72 to 96 months (see Exhibit #_1_) As of his initial hearing he had served 183 months. With and added additional disciplinary guideline range of 12 to 86 months the Commission determined that thier Guideline range indicated that Mr. Thomas serve 263 to 361 months, and a three year set-off was imposed. The NOtice of Action stated  that the decision was not appealable.

55. The stated reason on the Notice of Action was simply: "a decision outside the guidelines at this consideration is not found warrented". Thus under the Commisions decisions and guidelines, Mr. Thomas will be forced to serve at least the full 20 years which would account for the entire minimum terms, removeing the expectation under the prior Board of Parole that a determination could be handed down at the completion of the minimum term [less applicable good time] at his parole eligibi- lity date when he satisfied accountability at 179 months. that a parole date could be set. Between 13½ to 17½ years into the sentence.

56. At the initial hearing Mr Thomas sentence was increased with a base guideline range that under the prior D.C. Parole Board policies and practices was included in the minimum term of accountability.

57. Mr. Thomas' sentence was further increased by 12 to 86 months being added for disciplinary guideline range [later changed to 12 to 56 months.] The Commission based this increase in the period he had to serve before

-15-

being considered suitable for parole based on disciplinary reports that the prior Board of Parole would not have even considered. If the report were over 12 months old, they were not considered unless they were in a certain serious catagory. i.e. murder, amnslaughter, kidnapping, arm robbery or first degree burglary. The Commission, on the other hand, using the 2000 Guidelines increased his sentence guiddelines 12 to 56 months based on infractions that the Parole Board would not even have considered under its statutes, regulations, guidelines, policies and practices.

**58.** Thus, the minimum term [less applicable good time] has been increased from 13½ years to 21 years or more with the Commissions 2000 Guidelines using extra months for the base offence range (72 to 96 months) and the disciplinary range (12 to 56 months).

**59.** On July 17, 2006 after Mr. Thoams had served 208 months [more than three years longer than his minimum term [less applicable good time] to be eligible for parole under the Parole Boards statutes, regulations guidelins, policies and practicies-the Commission conducted his rehearing, again using the 2000 Guidelines as apposed to the Parole boards 1987 Guidelines and 1991 Policy Guideline.

**60.** At the July 2006 rehearing, the Examiner adjusted Mr. Thomas' minimum sentence to reflect a two month addition for one minor incident report for insolence. He also credited Mr. Thomas for completion of one program, the CODE Program and gave him a four month reduction in the guidelines for Superior Program Achievement.

**61.** Mr. Thomas had completed a high volume and wide range of educational and counseling courses and also two vocational trades for which he was not given credit, from initial hearing to his rehering. (see Exhibit#2)

-16-

C.    MR. THOMAS' RIGHTS UNDER THE PAROLE BOARDS
      1987 GUIDELINES

62. Under the Parole Boards stautes, regulations, guidelines, policies, and practicies, Mr. Thomas had served the "minimum sentence" for his offence when he became eligible for parole after serving 179 months Under the Boards statutes, regulations, guidelines, policies and practices, the "minimum term" [less applicable good time] represented the period that he needed to serve to satisfy accountability for the offence.

63. As explained above, the Boards statutes, regulations, guidelines, policies, and practices treated the minimum term as addressing accountability. The Commission under federal guidelines, however, takes Mr. Thomas' minimum sentence (i.e. the initial parole eligibility date) and has added a base point guideline range which under the Boards prior statutes, regulations, guidelines, policies, and practices already has been accounted for within the minimum sentence.

64. The Parole Boards 1987 Guidelines also do not provide for increasing an offenders minimum sentence by considering formulic disciplinary : Guideline Ranges. Thus, whereas the Commission increased Mr. Thomas' total guideline range by 84 to 152 months under the 2000 Guidelines based upon disciplinary infractions that would not even had been considered by the D.C. Board, in violation of the EX POST FACTO Clause.

65. Instead, under the 1987 Guidelines, only disciplinary infractions committed within 12 months preceding the hearing or during the last half of the minimum sententence up to a period of three years are considered for purposes of evaluating an inmates parole eligibility, unless the infraction was for murder, manslaughter, kidnapping arm robbery or first degree burglary. Mr. Thomas' violations did not qualify because only two were within the last three years prior to the initial hearing

and only one was within the last 12 months prior to the heraing.

66. Had the Commission applied the Parole Boards 1987 Guidelines and its 1991 Policy Guidelines to his parole review, Mr. Thoams would have fared better and would have erned a score of 2 at his initial hearing because of hi programming at University of District of Columbia, maketing course and business courses

67. Further, had the Commission applied the Boards Guidelines at his rehearing, and additional two point reduction would have been earned because of his exemplary and continuous program completions between his initial and his rearing three years later, giving him a total point score under th 1987 Guidelines of "0" under which parole would have been granted with a minimum level of supervision.

68. As the United States Court of Appeals for the District of Columbia Cicuit recognized in **Fletcher v. Reilly,** the defendants application of new guidelines that significantly increase that Mr. Thomas will serve a longer sentence than he would had the Commission applied the 1987 Guidelines, violated the Ex Post Facto Clause of the United State Constitution.

69. Between his 2003 and his 2006 rehearing, Mr. Thomas completed the following: **12 month residential CODE PROGRAM and 9 months of CODE after care;the CHOICES Program; Breaking Barriers Program;** Counseling groups-**Alternative Problem Solving;Anger Management; Living Free Values; Stress Less; Cage Your Rage; Parenting Skills;** Educational courses-**Real estate; Conversational Spanish; HIstory of Acient Egypt; World Geography; American Government: 20th Century History; Modern Marvels: Coilor of War: Countries of the World; Lost civilizations; Nature Assassins; Prison tro Pay Check; Business Managment; Introduction to** Computers; Vocational Trades- **Micro Computer Applications and Keyboarding.**

70. Despite these monumental and exemplary achievements, and the fact that Mr. Thomas is confined to a wheelchair as a result of a severe stroke, and suffers from other ailments such as diabetties, high blood pressure and cronic pain, the Commission refused to credit his outstanding achievements and only awarded him a four month grant for superior programming (see Exhibit #3) Under the 1987 Guidelines and the 1991 Policy Guidelines, these programs and educational achievements and the two vocational trades would have been CREDITED BECAUSE THEY WOULD HAVE qualified as " exceptional and sustained program achievements" and would have decreased Mr. Thoams' total point score by 2 or more points theereby making it a reasonable probability that his parole request w would have been granted.

71. The hearing examiner stated on the record tape at the July 06 rehearing that: "at your next hearing yoy will have 242 months-I am
     going to award you a superior program achievement award for
     four months that will change from 263 to 332  to 259 to 329".
Mr Thomas["All this work I have done, been doing and trying to show
     eveyone that I have changed and can be better-I have two voca-
     tional trades, I mean your not awarding me anything for this´?"
Examiner-"As an examiner I look at programs which I view are above
     and beyond. Things that you take that are-that are designed
     to benifit you as a person in terms of your reentry I dont
     consider exceptional. You would have needed those skills to
     assist you in the community anyway." (see Exhibit # 4  )

72. In the Notice of Action, the Commission has grouped all of Mr. Thomas' achievements under one small grant of superior program achievement of four months-not really giving the credit he is due for the exceptiopnal accomplishmnts violating due process.

**73.** The Commissions failutre to use the 1987 and the 1991 Guidelines and to credit Mr. Thomas for all of his programs, vocational trades, educational and counseling achievements violates not only Due Process but also violates the Ex Post Facto Clause..

**74.** Under the D.C. Board of Parole the SFS was applied to the applicants pre and post incarceration record soley to determine parole eligibility. The Commission, however, applying its 2000 Guidelines rather than the Parole Board Guidelines, used Mr. Thomas' SFS to add 76 to 92 more months to his sentence to account for offence accountability and severity. The 78 to 92 months added through the use of the Commissions application of its offence accountability guidelines increased the risk that Mr. Thomas incarceration will be prolonged in violation of the Ex Post Facto Clause, if for no other reason than the fact the D.C. Parole Board has taken offence accountability to be satisfied at the completion of the minimum term  less applicable good time-at parole eligibility.

**75.** Had the Commission evaluated Mr. Thomas under the D.C. Boards Guide-lines, his SFS would have been 5 an his "total point score would have been 2 or 3 at his initial hearing, and at his rehearing he would have recieved point reduction(s) of at least one point for his sustaineduand exemplary programming and another point reduction for the vocational trades and counseling achievements. (See  Exhibit # _2_ and # _5_ Doctor Micthell recommendation and Mr. Cosgrove Reccomendation)

**76.** Under the Parole Boards Guidelines, oif the grid point score equals three or less, parole should be granted unless the Board finds that "unusal circumstances exist." See 28 D.C.M.R. **§ §** 204.19, 204.22.

## COUNT 1:  THE DEFENDANTS VIOLATED THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION

77 .Plaintiff  repeat and re-allege the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78.  The retroactive application of a new law, resulting in a significant risk of prolonging an inmate's sentence beyond what would have resulted under the guidelines in effect when the inmate was convicted, constitutes a violation of the Ex Post Facto clause of the United States Constitution.

79.  Prisoners are entitled to know the range of punishments available at the time of sentencing, and during the adjudication of their case.  The Ex Post Facto Clause assures that individuals are given fair warning of what actions will be punished *and the degree to which they will be punished.*

80.  Under the 2000 Guidelines and their own interpretation of the Parole Board's 1987 Guidelines and 1991 Policy Guideline, the Defendants, their predecessors, and/or their designees have denied  Plaintiffs' requests for parole and significantly increased the risk that Plaintiffs' period  of incarceration will be prolonged and that  he  will serve longer than  he  would had the Parole Board's guidelines, policies, and practices been applied.  Specifically, Defendants have significantly increased the risk that Plaintiff  will serve longer periods of incarceration than  he  would have had the Parole Board's statutes, regulations, guidelines, policies, and practices been applied correctly by:

> a.  increasing the period the Parole Board considered as satisfying offense accountability, i.e., Plaintiffs' parole eligibility dates;

b.  failing to give Plaintiffs credit for program achievements pursuant to the Parole Board's Guidelines; and

c.  increasing Plaintiffs' guideline ranges by considering disciplinary infractions that the Parole Board would have ignored.

81.  By ignoring the Parole Board's statutes, regulations, guidelines, policies, and practices, which consider the Plaintiffs' minimum sentences as satisfying offense accountability, the Defendants have necessarily significantly increased the risk that the Plaintiffs will be incarcerated longer than he would have been had the Parole Board's statutes, regulations, guidelines, policies, and practices been applied.

82.  Similarly, Defendants have necessarily significantly increased the risk that Plaintiffs will be incarcerated longer by failing to award Plaintiffs credit for his program achievements if Defendants felt that such achievements did not rise to the level of "superior program achievement," as opposed to the Parole Board's standard of "sustained program achievement."

83.  Finally, it cannot be disputed that Defendants have necessarily significantly increased the risk that Plaintiffs will be incarcerated longer than he would have been had the Parole Board's Guidelines been applied by considering institutional infractions that would not have affected the Parole Board's consideration of Plaintiffs' parole applications in any way.

## COUNT II:   VIOLATION OF THE PLAINTIFFS' FIFTH AMENDMENT AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

84.  Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85.  Plaintiffs have constitutionally protected interests in receiving credit for his program and work achievement as provided for under the 1987 Guidelines, the 1991 Policy

-22-

Guideline, and the Commission's own 2000 Guidelines. In previously-outlined instances, however, Defendants have refused to give Plaintiffs credit for such achievement earned prior **his** parole hearings.

86. Further, the Defendants continue to apply improper self-imposed standards, rather than the guidelines established by the Parole Board, which held authority over the Plaintiffs who were D.C. Code offenders at the time of **his** convictions and sentencing.

87. Finally, Defendants have failed to apply the very guidelines they officially state they are applying, whether it be the Parole Board's guidelines with respect to **initial** and **rehearing** parole applications or the 2000 Guidelines with respect to **superior prog-ramming awards** and **Thomas'** parole applications. Defendants violate Plaintiffs due process rights under the Fifth and Fourteenth Amendments to the United States Constitution when they fail to follow the very guidelines they are purporting to apply.

88. As a result, Defendants have denied Plaintiff **his** constitutional rights to a fair review process.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully request that this Court:

1.    require the Defendants to apply the Parole Board's statutes, regulations, guidelines, policies, and practices, including, but not limited to the 1987 Guidelines and the 1991 Policy Guidelines, to Plaintiffs' requests for parole;

2.    deem that Plaintiffs' service of the sentence to the parole eligibility dates satisfy the offense accountability for parole consideration purposes;

3.    order the Defendants to reconsider the decisions rendered on Plaintiffs' applications for parole based on the existing record in a manner consistent with the D.C. Parole Board's 1987 Guidelines, 1991 Policy Guideline, the other statutes, regulations, guidelines,

policies and practices of the Parole Board, federal regulations, the Constitution, and all other requirements of law;

4.    award plaintiff attorneys fees and litigation expences; and

5.    grant such other relief as the Court deems appropriate.

DATE JULY 31, 2007

Respectfully Submitted

*Melvin E. Thomas*

Melvin E. Thomas #03584-000
USP Terre Haute-P.O. Box 12015
Terre Haute Indiana, 47801

## CERTIFICATE OF SERVICE

I, hereby certyfy that I have cause a copy of this motion and have mailed it to th AUSA Office at _____N/A_____

_____,on this_____
2007.

*Melvin E. Thomas*

Melvin E Thomas

# EXHIBIT 1

USPC                10/8/2003  9:04      PAGE 1/4   RightFax    

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

| | |
|---|---|
| Name:  THOMAS, Melvin | Institution:  Pollock USP |
| Register Number:  03584-000 | |
| DCDC No:  199-026 | Date:      October 8, 2003 |

In the case of the above-named, the following parole action was ordered:

Deny parole.  Continue to a Three-Year Reconsideration Hearing in September 2006, after the service of 36 months from your hearing date of September 16, 2003.

**REASONS**:

Your Total Guideline Range is 263-361 months.  See the attached sheet for the components that make up your Total Guideline Range.  These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 172 months as of October 8, 2003.

After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001

07 1689

*INMATE THOMAS*
*Recieved copy of*
*NOA on 1t S-3*
*by B Dypd CSe*

**FILED**

## SALIENT FACTOR SCORE (SFS-98)

**Your Pts** | **Salient Factor Score (SFS-98) Item Explanations**

1    **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

1    **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

3    **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

0    **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

0    **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

0    **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

5    **Salient Factor Score (SFS-98)** (sum of points for A-F above)

## BASE POINT SCORE

**Your Pts** | **Base Point Score Category Explanations**

,2    **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

4    **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

2    **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

8    **Base Point Score** (sum I-III above)



USPC          10/8/2003  ·9:04   PAGE 3/4   RightFax

## DISCIPLINARY GUIDELINES

You have 11 non-drug related infraction(s) [0-2 months each], which requires 0-22 months to be added to your base point score guideline range.

You have 1 drug related infraction(s) [0-8 months each], which requires 0-8 months to be added to your base point score guideline range.

You have behavior that constitutes new criminal conduct in a prison facility, which is rated as Category One severity because it involved Threatening on 5 separate occasions. This requires 0-8 months for each offense to be added to your base point score guideline range.

You have behavior that constitutes new criminal conduct in a prison facility, which is rated as Category Three severity because it involved Possession of a Weapon. This requires 12-16 months to be added to your base point score guideline range.

You have an aggregate disciplinary guideline range of 12-86 months, which is to be added to your base point score guideline range.

### SUPERIOR PROGRAM ACHIEVEMENT AWARD

**Not Applicable**

### TOTAL GUIDELINE RANGE

|         |                                                  |
|---------|--------------------------------------------------|
| 72—96   | Base Point Score Guideline Range                 |
| 179-179 | Months Required to Serve to Parole Eligibility Date |
| 12—86   | Disciplinary Guideline Range                     |
| less 0—0 | Superior Program Achievement Award (if applicable) |
| 263-361 | **Total Guideline Range**                        |

| Base Point Score Guideline Range | | Points For SFS Item C. | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-3 | 4 | 5+ |
| 3 or less | 0 months | 26 & Up | 3 | 2 | 1 |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 2 | 1 | 0 |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | 0-19 | 0 | 0 | 0 |
| 10 | 136-172 months | | | | |



| Base Point Score Guideline Range | |
|---|---|
| Score | Guideline Range |
| 3 or less | 0 months |
| 4 | 12-18 months |
| 5 | 18-24 months |
| 6 | 36-48 months |
| 7 | 54-72 months |
| 8 | 72-96 months |
| 9 | 110-140 months |
| 10 | 156-172 months |

# EXHIBIT 2



**LIMITED OFFICIAL USE**

# Federal Bureau of Prisons
# Psychology Data System

**Date-Title:** 07-25-2006 - Eval/Rpt - Treatment Summary
**Reg Number-Name:** 03584-000 - THOMAS, MELVIN E.    **Unit:** IV
**Author:** JOHN R. MITCHELL, CH PSYCH
**Institution:** ALP - ALLENWOOD USP

**REASON FOR REFERRAL:** Inmate Thomas is scheduled to see the Parole Board. This report is to provide a summary of the treatment programs he has been involved in.

**TREATMENT SUMMARY:** Thomas has completed a number of rehabilitative and self-improvement courses. He just recently completed the C.O.D.E. (Challenge, Opportunity, Discipline, and Ethics) Program in June, 2006. The CODE Program is a year-long residential treatment program that assists inmates in changing criminal thinking, emotion management, developing victim empathy, addressing addictive behaviors, improving communication and relationship skills, and preparing for release. Mr. Thomas began the CODE Program at USP Pollock and was able to complete the program here at Allenwood. He has also completed the CODE Aftercare Program here at Allenwood. Most recently, Thomas completed the CHOICES Program here at Allenwood, a therapy group in which inmates examine criminal behaviors and patterns, and learn more prosocial attitudes and behaviors.

Thomas has also completed several counseling groups during his recent years. These include Effective Alternatives, a positive mental attitude program; Living Free Values, a values-clarification group; Parenting Skills; Problem-Solving, a group that helps inmates improve decision-making and rational thinking; Anger Management (in two separate time periods); Living Free; Stress-Less, a stress management group; Cage Your Rage, a structured anger management course; and Breaking Barriers, a pre-release program. As one can see, Thomas has completed virtually every established BOP counseling group that is typically offered in a penitentiary setting, and he has been willing to take certain courses (e.g., Anger Management) more than once.

Thomas has taken a high number and wide variety of educational classes. He has completed all of the following: Real Estate; Conversational Spanish; History of Ancient Egypt; World Geography; American Government; Introduction to Computers; 20th Century History; Modern Marvels; Color of War; Countries of the World; Small Business Management; Lost Civilizations; Prison to Paycheck (I); and Nature's Assassins. Additionally, he has completed vocational training in Keyboarding, Microcomputer Applications, and Office Systems Technology.

**SUMMARY:** It is clear from Thomas' records that he has completed a high volume and wide variety of rehabilitation and self-improvement programs. He has also chosen to go through certain programs, like anger management, on more than one occasion, which shows a good desire to gain mastery over important skills.

07 1689

If Thomas is granted release, he should receive more intensive pre-release preparation, while continuing counseling programs that will assist him with reintegration into society and a furthering of the life skills he will need to succeed.

**LIMITED OFFICIAL USE**

**FILED**

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 3

# HEARING SUMMARY

**Name:  Thomas, Melvin**

**Reg No:  03584-000**

**Hearing Parameters**

Hearing Format .............................: **In Person**

Hearing Type ...............................: **Reconsideration (3-5 Year Rehearing)**

Hearing Date ...............................: July 27, 2006

Examiner.......................................: Paul R. A. Howard

Institution .....................................: Allenwood USP

**Sentence Parameters**

Sentence Type...............................: **DC Parole Eligible**

MR/Statutory Release ..................:

Full Term Date.............................: Life

Months in Custody.......................:  206 as of 7/31/06

Fines/Restitution/Assessment ......: 0

Detainer.........................................: None

**Additional text regarding the above parameters:**

## Prior Action & Institutional Factors

**Prior Action:**  See Pre-Hearing Assessment dated July 19, 2006.

---

**Codefendants:**  None Listed

07 1689

**Representative & Representative's Statement:**  Correctional Counselor, John Grill, attended the hearing. Mr. Grill stated that his interaction with the subject has been good and he has noted a change in the subject's behavior towards other staff members.

Subject submitted a Progress Report from Chief Psychologist, John Mitchell, stating the subject completed the C.O.D.E. Program in June 2006. The C.O.D.E. Program is a year long residential treatment program that assists offenders in changing criminal thinking, emotion management, developing victim empathy, addressing addictive behavior, improving communication and relationship skills and preparing for release. Most recently, the subject completed the Choices Program, which is a therapeutic group where inmates examine criminal behavior and patterns and learn more pro social attitudes and behavior. He noted subject has also completed several counseling groups during his recent years. He has also taken a high number and wide variety of education classes. He recommends that if the subject is released, he should receive more intensive pre-release preparation while continuing

FILED

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

EXHIBIT
3



counseling programs that will assist him with reintegration into society and furthering of the life skills he will need to succeed.

**Prisoner's Statement:** Subject submitted a six paged documentation with supporting documents dated July 2006. In summarizing the documents, the subject stated that the documents support his achievements since his last hearing. He further stated that he does have remorse for his actions. He is paralyzed and this has caused him to have a new outlook. He has matured and learned to manage his health better. He has been in prison 17 years, which has been a wakeup call for him.

The subject read a portion of his six page statement into the record.

Subject submitted a letter from the Correctional Case Manager at USP Pollock which is also included in the packet the subject submitted for today's hearing stating the subject should be considered for a Superior Program Achievement (SPA) Award based on his program achievements. That letter is dated October 5, 2005.

## Disciplinary Infractions

**No. 1 - BOP Incident Report No. 1416752**
   **Description of Behavior:** Insolence. On December 29, 2005, subject was charged with Assaulting Any Person. Subject was found guilty of Insolence. The subject threw his identification card at an officer. Subject was sanctioned on January 11, 2006 to 15 day's segregation, suspended for 180 days, and six months loss of visiting.
   **Prisoner's Response:** Subject admitted the violation without comment.
   **Findings of Fact:** This Examiner finds that the subject violated the rules of the institution as indicated in the above violation.
   **Basis:** Your admission and Disciplinary Hearing Officer finding of guilt.
   **Rescission Guideline: 0-2 months**

**Program Achievement:** Since the subject's last hearing in September 2003, subject has completed the following educational/vocational programs: C.O.D.E. Program on July 24, 2006, Choices/Conflict Resolution on July 24, 2004, Parenting Skills – Level I on June 8, 2006, Alcohol Anonymous on March 15, 2006, C.O.D.E. Aftercare (two phases) on March 28, 2006 and February 28, 2006, Living Free Values on September 25, 2005, Micro Computer Applications on September 22, 2005, Vocational Training/Keyboard on June 23, 2005, Effective Alternatives on June 14, 2005, Real Estate on May 4, 2005, Problem Solving on April 15, 2005, Anger Management on April 11, 2005, Conversational Spanish on March 24, 2005, Ancient Egypt on March 15, 2005, Rank and Government on March 15, 2005, Cage Your Rage on December 13, 2004, Intro to Computers on May 5, 2004, Twentieth Century History in January 2004, Modern Marvels in October 2003, Colorvor on October 22, 2003, Colors of the World on October 20, 2003 and Breaking Barriers on September 22, 2005.

Subject is currently enrolled in a Parent III Class.

The subject is unable to work due to his medical condition (paralysis).

**Release Plans:** When released, the subject will reside with his wife, Rose Wright, at 5228 Downing Street, Number 9B, Alexandria, Louisiana 71301. Phone number: 318-473-0681.

**Thomas, Melvin, Reg. No. 03584-000**          **Page 2 of 4**

## Guideline Parameters, Evaluation & Recommendation

**Salient Factor Score:**  5
**Base Point Score:**    8

```
Base Point Score Guideline Range: ................................72-96
Months to Parole Eligibility Date: ..............................179-179
Disciplinary Guidelines BEFORE Last Hearing: ...........12-56
Superior Program Achievement BEFORE Last Hearing: ..0-0
Converted Guidelines: ...............................................263-331
Total Guidelines: .......................................................263-331
Disciplinary Guideline SINCE Last Hearing: ...................0-2
Superior Program Achievement SINCE Last Hearing: ......4-4
Total Guideline Range: ..............................................259-329
```

**Evaluation:** Subject is serving an aggregate life term for Assault With Intent to Rob and Assault With Intent to Kidnap While Armed. Subject had an Initial Hearing in September 2003 and was denied parole with a Rehearing after the service of an additional 36 months. Subject's Guidelines at the initial hearing were 263-331. Those guidelines included rescission guidelines of 12-56 months. Since his last hearing, the subject has incurred one additional DHO level infraction for added guidelines of 0-2 months.

At today's hearing, the subject expressed remorse for his past behavior and how it has affected him and his family. He has changed his behavior and his medical condition has also caused him to have a different outlook on life. He submitted documents outlining his Program Achievement including a recommendation for a Superior Program Achievement Award from the Case Management Coordinator at United States Penitentiary Pollock.

Since the last hearing, the subject has completed numerous educational/vocational programs including the C.O.D.E. and Aftercare Programs, in addition to Anger Management, Parenting and other programs geared toward self-improvement.

It is recommended that the subject receive a Superior Program Achievement Award of 4 months based on his programming continued programming.

The subject has been in custody for 206 months, which is 57 months below the bottom of his current guidelines of 263-333. If he is granted the recommended SPA award, he will be 53 months below the bottom of the guidelines. Based on the time served, a rehearing after the service of an additional 36 months is recommended.

**Recommendation:** Schedule for a reconsideration hearing in July 2009.

**Conditions:** None

**Statutory Interim Hearing:** None

**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** None

I certify that I have reviewed this hearing summary.

*Paul R.H. Howard*

Paul R. Howard, Hearing Examiner

PRH/SDS
August 4, 2006

**Executive Reviewer's Comments:** - agree. USPC limited to a 36 month set-off because, although offense involved attempted murder, victim did not die.

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

Name:  THOMAS, Melvin
Register Number:  03584-000
DCDC No:  199-026

Institution:  Allenwood USP

Date:  August 18, 2006

As a result of the hearing conducted on July 27, 2006, the following action was ordered:

Deny parole.  Continue to a Three-Year Reconsideration Hearing in July 2009.

**REASONS**:

Your Current Total Guideline Range is 250-320 month(s).  See the attached sheet for the components that make up your Current Total Guideline Range.  These components are your Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 206 months as of July 31, 2006.

After consideration of all factors and information presented, a decision outside the Current Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:   CSS Data Management Group
      D.C. Court Services & Offender Supervision Agency
      300 Indiana Avenue, N.W., Suite 2070
      Washington, D.C. 20001

07 1689
**FILED**

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



EXHIBIT

Thomas  03584-000
Queued: 08-18-2006 14:38:46 BOP-Allenwood USP

-1-

Clerk:   ADC

## DISCIPLINARY GUIDELINES

You have 1 non-drug related infraction(s) [0-2 months each], which requires 0-2 months to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 4 month(s) from your Total Guideline Range for superior program achievement. This was granted because since your last hearing in September 2003, you have completed the following educational/vocational programs: C.O.D.E. Program on July 24, 2006, Choices/Conflict Resolution on July 24, 2004, Parenting Skills - Level 1 on June 8, 2006, Alcohol Anonymous on March 15, 2006, C.O.D.E. Aftercare (two phases) on March 28, 2006 and February 28, 2006, Living Free Values on September 25, 2005, Micro Computer Applications on September 22, 2005, Vocational Training/Keyboard on June 23, 2005, Effective Alternatives on June 14, 2005, Real Estate on May 4, 2005, Problem Solving on April 15, 2005, Anger Management on April 11, 2005, Conversational Spanish on March 24, 2005, Ancient Egypt on March 15, 2005, Rank and Government on March 15, 2005, Cage Your Rage on December 13, 2004, Intro to Computers on May 5, 2004, Twentieth Century History in January 2004, Modern Marvels in October 2003, Behavior on October 22, 2003, Colors of the World on October 20, 2003 and Breaking Barriers on September 22, 2003.

You are currently enrolled in a Parent III Class.

## CURRENT TOTAL GUIDELINE RANGE

| | |
|---|---|
| **8** | Base Point Score |
| 72—96 | Base Point Score Guideline Range |
| 179-179 | Months Required to Serve to Parole Eligibility Date |
| 12—56 | Disciplinary Guideline Range (before last hearing) |
| **less 0—0** | Superior Program Achievement Award (before last hearing) |
| 263-331 | Previous Guideline Range Conversion |
| | |
| 0—2 | Disciplinary Guideline Range |
| **less 4—4** | Superior Program Achievement Award (if applicable) |
| | |
| **259-329** | **Current Total Guideline Range** |



| Base Point Score Guideline Range | |
|---|---|
| **Score** | **Guideline Range** |
| 3 or less | 0 months |
| 4 | 12-18 months |
| 5 | 18-24 months |
| 6 | 36-48 months |
| 7 | 54-72 months |
| 8 | 72-96 months |
| 9 | 110-140 months |
| 10 | 150-72 months |

# EXHIBIT 4

### AFFIDAVIT OF MELVIN E. THOMAS
### AND VERICATION

I Melvin E. Thomas, due declare under the penalties of perjury that the following is true and correct as I Know the fact's to be:

That on July 27, 2006 I went before the U.S. Parole Commission and was seen by one member of the commission named Paul Howard and that the following recorded conversation took place between him and I, concerning sperior program achievement award at the end of the tape:

"A¢ your next hearing, you will have 242 months-I am gonna award you a suprior program award for completion of the CODE Program for four (4) months that will changes from 263 to 332 to 259 to 329".

Petitioner: "All this work I have done, been doing and trying to improve myself and show everyone that I have changed and can be a better-I have two vocational trades, I mean your not awarding me any thing for this ? "

Paul Howaßed-Examiner: "As an examiner I look at programs which I view are above and beyond. Things that you take that are-that are designed to benifit you as a person in terms of your re-entry-I dont consider exceptional. You would have needed those skills to assist you in the community anyway".

Petitioner: "Computer applications and training-thats why I did all this because I know I am handicap and am gonna need to work to support myself. I also have a job offer at a computer level entry level."

Examiner: "Thats my recommendation, good luck sir".

At that time the tape was cut off.

Date ___8/9/07___

_____
(Signiture)


Notary Public TAMMY BANKSTON
Notary Public State of Indiana
Vigo County
My Commission Expires
June 29, 2015

# EXHIBIT **5**



UNITED STATES GOVERNMENT
# memorandum
FEDERAL BUREAU OF PRISONS
United States Penitentiary
Pollock, Louisiana

---

October 5, 2005

**MEMORANDUM FOR R. ANDERSON, CASE MANAGER**
**A UNIT TEAM**

**FROM:**        R. Cosgro, CMC

**SUBJECT:**     U. S. Parole Commission Hearing Recommendation
Melvin Thomas
Reg. No.: 03584-000

The purpose of this memorandum is to provide input for the upcoming parole hearing of the above-named inmate.

Inmate Thomas came into the District of Columbia, Lorton prison system as a DC Superior court commitment. He was sentenced on September 12, 1990, to a DC GTCA Adult Sentence with a minimum term of fifteen years and a maximum term of Life. While it is obvious that he came into the Federal system and received incident reports for the first few years; it is also obvious that he has chosen to take a different path. In 2003, he received his last incident report and since that date has made a concerted effort to program and prepare himself for his release.

Beginning in 2003, he has enrolled in and completed 112 hours of Adult Continuing Education courses. He has also completed the following Release Preparation Program courses:

| Program | Hours |
|---|---|
| Prison to Paycheck | 14 hours |
| Stress Less | 7 hours |
| Small Business Class | 34 hours |
| Breaking Barriers | 15 hours |
| Cage Your Rage | 12 hours |
| Living Free | 6 hours |

Inmate Thomas enrolled in the CODE Program and has participated and continues to participate in groups and courses which have led to a new outlook and a positive approach to his daily goals and

07 1689

**FILED**

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

more importantly his future plans for reentry into the community. Along with completing numerous groups and counseling courses for self improvement he has taken it upon himself to become better prepared and marketable by completing the Vocational Training courses for Introduction to Computing, Computer Keyboarding, Microsoft Word, Microsoft Excel, Microsoft Access, and 222 hours in Microcomputer Applications.  This extensive preparation is evidence of his desire to make life changes necessary for his reentry and be better able to deal with situations he will encounter upon returning to society.

He maintains contact in the community and currently has a fiancee who he plans to marry in the near future.  His approach when dealing with staff is positive and he has a good rapport and respectful attitude when discussing issues relevant to his situation.  It is my belief that he has exhibited Superior Program Achievement and warrants all due consideration.

F- 1689

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS**

MELVIN E. THOMAS

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro Se (PS)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
# 03584-000

**DEFENDANTS**

EDWARD F. REILLY JR. ETAL

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:07-cv-01689
Assigned To : Unassigned
Assign. Date : 9/24/2007
Description: Pro Se gen. Civil

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

■ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other) OR** ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

**No Summons Issued**

| ☐ **G.** *Habeas Corpus* | ☐ **H.** *Employment* | ☐ **I.** *FOIA/PRIVACY* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| | *Discrimination* | *ACT* | |
| ☐ 530 Habeas Corpus-General | ☐ 442 Civil Rights-Employment | ☐ 895 Freedom of Information Act | ☐ 152 Recovery of Defaulted Student |
| ☐ 510 Motion/Vacate Sentence | (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) | ☐ 890 Other Statutory Actions (if Privacy Act) | Loans (excluding veterans) |
| | *(If pro se, select this deck)* | *(If pro se, select this deck)* | |

| ☐ **K.** *Labor/ERISA* (non-employment) | ☐ **L.** *Other Civil Rights* (non-employment) | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act | ☐ 441 Voting (if not Voting Rights Act) | ☐ 110 Insurance | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |
| ☐ 720 Labor/Mgmt. Relations | ☐ 443 Housing/Accommodations | ☐ 120 Marine | |
| ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 444 Welfare | ☐ 130 Miller Act | |
| ☐ 740 Labor Railway Act | ☐ 440 Other Civil Rights | ☐ 140 Negotiable Instrument | |
| ☐ 790 Other Labor Litigation | ☐ 445 American w/Disabilities-Employment | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | |
| ☐ 791 Empl. Ret. Inc. Security Act | ☐ 446 Americans w/Disabilities-Other | ☐ 153 Recovery of Overpayment of Veteran's Benefits | |
| | | ☐ 160 Stockholder's Suits | |
| | | ☐ 190 Other Contracts | |
| | | ☐ 195 Contract Product Liability | |
| | | ☐ 196 Franchise | |

**V. ORIGIN**

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** - 0 -   Check YES only if demanded in complaint **JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES ☐ NO  If yes, please complete related case form.

DATE 9-24-07   SIGNATURE OF ATTORNEY OF RECORD   NCD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

